WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Nubian Amon-Ra,

               Petitioner,

v.

Charles L Ryan, et al.,

               Respondents.

No. CV 16-00253-TUC-CKJ

**ORDER**

On October 24, 2016, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation ("R&R") (Doc. 30) in which she recommended that this Court deny Nubian Amon-Ra's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) and his motion for a writ of *habeas corpus ad prosequendum* (Doc. 18). After the R&R issued, Petitioner filed a twenty-seven page objection with approximately 1,000 pages of exhibits. (Doc. 35-36.) The Government responded to the objections. (Doc. 42.) Petitioner filed a supplemental response (Doc. 38) with an additional 175 pages of exhibits (Doc. 39). Upon review, the Court will deny both the § 2254 petition and the pending motion.

***Standard of Review***

- ***Objections to R&R***

The standard of review applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions

of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Nonetheless, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

- **Review of Petitioner's § 2254 Petition**

This Court must review claims consistent with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court adopts the Magistrate Judge's summary of the legal and procedural requirements of the AEDPA regarding exhaustion and procedural default.

In addition, review of a habeas petition under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 170 (2011). In other words, this Court reviews only "the record *in existence at that same time*." *Id.* (emphasis added). For instance, when a petitioner raises a claim of prosecutorial misconduct in the state courts, additional facts of alleged misconduct are beyond the purview of the exhausted claim and may not be reviewed. *Rose v. Lundy*, 455 U.S. 509, 513 (1982).

**Factual and Procedural History**

Petitioner first objects to the Magistrate Judge's rendition of the facts of this case. After a *de novo* review of the record, the Court finds that the R&R accurately reflects the state court record. Furthermore, the Magistrate Judge's summary is substantiated by Petitioner's own filings and exhibits. The Court adopts the Magistrate Judge's recitation of facts and provides a brief summary for reference.

Petitioner was convicted on March 3, 2013, of aggravated assault with a deadly weapon and aggravated assault resulting in a fracture, and was sentenced to concurrent terms, with the longest term being 7.5 years' incarceration. (Doc. 1-7 at 7-8.)

Petitioner appealed the convictions on December 31, 2013 (*Id.* at 8), but appellate counsel could not find any arguable claims of error (Doc. 20 at 37). Petitioner then proceeded *pro se*, filing a supplemental brief that argued (1) the trial court's denial of Petitioner's motion for review of a preliminary hearing as untimely was in error and (2) the government's late disclosure of a transcript of the preliminary hearing violated his due process rights. (Doc. 1-8 at 2; Doc. 20, at 51-56.) On September 15, 2014, the Arizona Court of Appeals affirmed the conviction. (Doc. 1-8 at 4.) Petitioner did not appeal to the Arizona Supreme Court. (Doc. 1 at 5.)

Counsel filed a Notice of Post-Conviction Relief ("PCR") but found no colorable claims. (Doc. 1-12 at 1; Doc. 21-11 at 2-5.) Thereafter, Petitioner filed a *pro se* PCR petition, arguing (1) his trial counsel was ineffective for failing to present evidence of police misconduct, (2) the Sierra Vista Police Department ("SVPD") engaged in governmental misconduct by offering money in exchange for the victim's testimony against the Petitioner, and (3) prosecutorial misconduct occurred when the state prosecuted Petitioner despite an awareness that the victim had been paid for testifying. (Doc. 1-10 at 1-4.) The trial court found that the prosecutorial and governmental conduct charges were precluded under the Arizona Criminal Rules of Procedure, Rule 32.2(a), because both could have been raised on appeal, and dismissed the claim of ineffective assistance of counsel, stating that trial counsel's choice not to raise police misconduct constituted trial strategy and not ineffective assistance. (Doc. 1-12 at 1-2.)

The Arizona Court of Appeals granted review of Petitioner's Rule 32 appeal, but denied relief. (Doc. 1-14 at 2.)

Petitioner's instant §2254 petition raises six grounds for relief: (1) trial counsel was ineffective for failing to pursue a police misconduct defense at trial; (2) SVPD engaged in governmental misconduct by offering money in exchange for the victim's testimony, (3) prosecutorial misconduct occurred because the state prosecuted the case despite an awareness that SVPD bribed the victim; (4) Petitioner's sentence was illegally aggravated; (5) the trial court's decision to exclude evidence of the bribe and (6) its suppression of evidence were an abuse of discretion. (Doc. 1.)

For the reasons set forth below, the Court agrees with the recommendations in the R&R (Doc. 30) for each of Petitioner's claims.

***Petitioner's Objections***

- ### Ground One: Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy a two-prong test, demonstrating:  (1) deficient performance, such that counsel's actions were outside the wide range of professionally competent assistance, and (2) that Petitioner was prejudiced by reason of counsel's actions.  *Strickland v. Washington*, 466 U.S. 668, 686-90, (1984); *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998). "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other."  *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002). "[The] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). When evaluating a state ineffective assistance of counsel claim in a federal habeas petition, the standards set forth in *Strickland* are "doubly" deferential. *Harrington*, 562 U.S. at 105. "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

In Ground One, Petitioner claims that his trial counsel was ineffective for failing to raise the issue of police misconduct at trial. Petitioner claims that counsel told him he would use (1) transcripts of the victim's testimony from a preliminary hearing, and (2) a recorded interview with the victim to demonstrate that the SVPD bribed the victim in exchange for testimony against the Petitioner. (Doc. 1 at 6.)

The R&R concluded the Court was not permitted to review either the victim's interview or the audio and transcript of the preliminary hearing because they were not part of the state court record. (Doc. 30 at 7.) Furthermore, the Magistrate Judge indicated that even if it could be reviewed, the audio and video did not support Petitioner's theory of police misconduct. (*Id.* at 8-9.) She agreed with the state court's determination that trial counsel's decision amounted to trial strategy, not ineffective assistance of counsel.

(*Id.* at 8.) After a *de novo* review of the record, this Court agrees with the Magistrate Judge's well-reasoned determination. Nonetheless, the Court will address Petitioner's objections and explain why they do not alter the Court's conclusion.

Petitioner claims the Magistrate Judge's conclusions were biased because she ruled based on the record before her. (Doc. 35 at 2.) His objection states there was much that was not presented to the Magistrate Judge (*Id.* at 2), and attaches approximately 1,000 pages of exhibits to his objection (Docs. 35-36, Exhs. A-U). For the first time in his objection, Petitioner asserts that Detective Mike Mitchell was engaged in a sexual relationship with two women who Petitioner was also involved with. (Doc. 35 at 8-9.) Because of this clandestine liaison, Mitchell persuaded a witness named Jamie Price to testify falsely about Petitioner assaulting the victim. (*Id.* at 9.) However, the admitted transcripts of Jamie Price's interviews are from a different case against Petitioner—Cochise County Superior Court Docket No. CR-201200137 ("drug case")—and were not made part of the state court record in the instant case.

For the instant § 2254 petition, this Court may only consider the documents in the record at the time of the state proceedings for Petitioner's conviction in Cochise County Superior Court Docket No. CR-201200268. *See Cullen*, 563 U.S. at 170. Therefore, the documents that were never a part of the state record and those filed in Petitioner's related drug case are not permissible for review by this Court. Based on the evidence before it, the state court's denial of the ineffective assistance of counsel claim was not "contrary to" or an "unreasonable application of clearly established federal law." *See* 28 U.S.C. § 2254(d) However, for the sake of thoroughness, the Court has examined Petitioner's exhibits and finds that even if the Court were permitted to review the documents, it would not change its determination.

o ***Police Misconduct: Preliminary Hearing***

Petitioner objects to the Magistrate Judge's conclusion that trial counsel's failure to obtain a transcript from Petitioner's preliminary hearing did not constitute ineffective assistance. (Doc. 35 at 3.) Petitioner claims that the poorly-recorded audio of a preliminary hearing revealed that police bribed the victim to testify against him, and that

trial counsel's failure to use this evidence was not a tactical decision, but amounted to ineffective assistance of counsel. (*Id.* at 3, 14, 16.) During the preliminary hearing, there was no court reporter, and the microphone on the witness stand was not working properly. (Doc. 21-1, Exh. I at 3-4.) The Superior Court indicated a transcript was made of the hearing, but the witnesses' testimony was not included. (Doc. 1-5.) The R&R points out that even if the Court were permitted to review the testimony, it would not matter because the recording did not pick up the victim's testimony. (Doc. 30 at 6.)

Petitioner argues that the Magistrate Judge was incorrect; there was never a transcript of the preliminary hearing. (Doc. 35 at 11.) The court record indicates otherwise. (Doc. 1-5.) However, whether or not a transcript was produced is inconsequential to the Court's determination. Petitioner sent the Court a copy of the audio of the preliminary hearing, which this Court listened to in its entirety. (Doc. 14.) By using a state For the Record ("FTR") audio player and adjusting the sound input levels as suggested by Petitioner, the Court was able to discern the victim's testimony to which Petitioner references. Petitioner asserts that in the hearing, the victim testified that the police bribed him with money in exchange for making assault allegations against Petitioner. (Doc. 35 at 12.) However, the victim specifically testified that on several previous occasions before the assault, police asked him to act as a paid informant and disclose information about Petitioner's whereabouts. (Doc. 14 at 11:00 a.m.) The victim indicated he had refused the police's requests for information until Petitioner attacked him. (*Id.*) After that, he no longer wished to get something in return for his information, and told the police of the attack in order to get on with his life. (*Id.*) On redirect, the victim acknowledged that no one had given him any money or items in exchange for his testimony. (*Id.* at 11:11:00 a.m.)

So, even if the Court were permitted to evaluate the audio of the victim's testimony at the preliminary hearing, it does not support Petitioner's ineffective assistance of counsel claim. Counsel's failure to use the testimony from the hearing to show police misconduct was reasonable and a competent decision given the nature of the testimony.

o ***Police Misconduct: Video Interview with Victim***

Petitioner also argues that a SVPD video interview of the victim shows that police bribed him to testify that Petitioner had attacked him. (Doc. 1 at 6-7.) Because trial counsel failed to have the video transcribed, and was therefore unable to present the video at trial, Petitioner asserts his representation was ineffective. (*Id*.) After a *de novo* review of the video, this Court agrees with the Magistrate Judge that it does not contain evidence of police misconduct. (*See* Doc. 30 at 8.) If anything, it reiterates the victim's testimony from the preliminary hearing that prior to Petitioner's assault, he was offered money to be an informant. At most, the statement suggests that the victim is asking for financial assistance so he can get away from Petitioner, but the interviewer, Detective Tom Ransford, makes no offer of money in return for the victim's statement. It was not ineffective to fail to use this video at trial, because the statements do not demonstrate that the victim was bribed in return for his testimony that Petitioner had assaulted him. As stated at the state court level, raising this police misconduct claim could have easily backfired, and the choice not to present this evidence did not constitute ineffective assistance of counsel. (*See* Doc. 22-1.)

Here—as with the preliminary hearing testimony—the Court finds that because the video interview with the victim was not properly admitted in the state court proceeding, this Court may not review it. However, even if it could, this Court finds that failing to transcribe the video or present it as impeachment evidence at trial did not constitute ineffective assistance of counsel. The excluded testimony does not demonstrate bribery on the part of Detective Ransford, or that the police department acted inappropriately in securing the victim's testimony.

o ***Police Misconduct: Simultaneous Sexual Relationship***

In his objection to the R&R, Petitioner's argues—for the first time in any proceeding—that SVPD Detective Mike Mitchell engaged in police misconduct when he pursued the arrest of Petitioner because Mitchell was engaged in a relationship with two of the same woman as Petitioner. It is unclear whether Petitioner asserts that his trial counsel should have raised this issue as part of a police misconduct defense, or as support

of his police misconduct claim alone. The Court will address both.

Petitioner draws his conclusion from several sources. First, Petitioner points to a newspaper article that indicates Mitchell was involved with a confidential informant, though the article does not identify the informant by name. (Doc. 35-1, Exh. A.) Second, Petitioner insinuates that since there was also a confidential informant in his case, the informant must be the same woman he alleges both were dating. Third, Petitioner claims that the evidence of the illicit, simultaneous affair can be found in a series of interviews with witness Jamie Price. (Doc. 35 at 4.) Finally, he concludes that because they were involved with the same woman, this proves that Jamie Price's witness testimony was false and coerced by Mitchell in retribution. (*Id.* at 4.)

Once again, Petitioner's exhibits in support were never presented to the state court, and may not be considered by this Court.

Second, because Petitioner did not raise any facts related to a romantic triangle between Detective Mitchell, Petitioner, and two women which led to police misconduct in any state proceeding, the issue has not been exhausted. *See Duncan,* 513 U.S. at 365-66; *Wooten,* 540 F.3d at 1025.

Furthermore, if Petitioner now attempted to return to the Arizona court system to exhaust this claim, he would be procedurally barred from raising this claim. *See e.g., Harris*, 489 U.S. at 269-70 (1989) (O'Connor, J. concurring) (noting that if a claim was not fairly presented in the state court, then the Federal court must determine whether there are state remedies available). In this instance, Petitioner's claim is technically exhausted and procedurally defaulted as "waived at trial, on appeal, or in any previous collateral proceeding" pursuant to Ariz.R.Crim.P. 32.2(a)(3). The Court is procedurally barred from reviewing this instance of alleged police misconduct.

Regardless, Petitioner's evidence does not support his assertion that Mitchell and Petitioner were involved with the same woman.

Petitioner implies that his romantic love triangle included the confidential informant mentioned in the newspaper article. This was allegedly the same woman who was an informant in Petitioner's drug case. Based on the evidence presented, the Court

cannot draw that conclusion. The judge in Petitioner's drug case denied counsel's request to disclose the name of the confidential informant against Petitioner. (Doc. 35-7 at 48-50; Doc. 35-8 at 5.) There is no evidence that the informant in Petitioner's case, or the informant implicated in the newspaper article, were ever revealed. Petitioner has provided no evidence that his confidential informant and the confidential informant mentioned in the article are one and the same.

In addition, the Court cannot conclude that Detective Mitchell was having an affair with Petitioner's girlfriend. The interviews with Jamie Price reveal only that Mitchell inquired about many potential leads, including several women, but do not indicate an unusual interest or an illicit affair with any individual woman. Other than the Petitioner's affidavit, there is no indication that Petitioner and Mitchell were romantically tied to the same woman.

Finally, even if there were a connection, which provoked Mitchell to coerce Price to testify falsely, neither Mitchell nor Price testified at Petitioner's trial, so Petitioner cannot show that he was prejudiced by either individual's testimony or that the allegations violated his due process rights.

Insofar as Petitioner is attempting to allege his trial counsel was ineffective for not raising the illicit affair at trial, Petitioner fails. Petitioner never claimed that he informed trial counsel of this unlikely coupling. Trial counsel is not required to be omniscient and to present matters to which he was unaware to be effective. Therefore, counsel's failure to raise police misconduct that was never brought to his attention is not "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 686-90.

o *Police Misconduct: Interviews and Police Report with Jamie Price*

Petitioner further claims that the interviews with Jamie Price, led by Officer Mitchell, were leading and coerced. Petitioner believes these interviews revealed Mitchell's misconduct, as well as the inconsistencies in Price's description of the assault on the victim, and the interviews should have been presented at trial.

Again, the transcripts Petitioner uses to support his allegation are from Petitioner's drug case, and were not a part of the state record in the instant case. And, as noted earlier,

neither Price nor Mitchell testified at Petitioner's trial. Because they were not a part of the record, the Court finds the documents are irrelevant to its determination of whether the state court's dismissal of Plaintiff's ineffective assistance of trial counsel claims were contrary to law or unreasonable given the facts which were presented to the state courts. Furthermore, trial counsel successfully moved *in limine* to preclude the testimony of Price rather than using the transcript or calling Price to testify for impeachment or to present a police misconduct defense. (Doc. 42-1, Exh. BB; Doc. 23 Exh. Y at 6.) This was a valid legal defense tactic because: (1) the testimony did not demonstrate police misconduct, (2) Price was an unreliable witness, and (3) permitting Price's testimony would have provided further support to the assault allegations and possibly lead to other unflattering testimony about Petitioner's involvement in drug distribution.

Petitioner cites to three interviews with Jamie Price by Officer Mitchell. In one interview, Price admitted he used drugs, heard voices, was off his medication, and had a head injury which caused him to not remember clearly. (Doc. 35-11 at 8.) Petitioner claims this interview demonstrates Mitchell hand-fed Price's story that Petitioner beat the victim. He claims Price's answer to a specific question proves coercion. When asked, "Are you saying that the police were feeding you information and you were agreeing with it?" Price first agrees, but then admits he is confused with the question. (Doc. 35-11 at 31.) Later, Price states that his response was referring to agreeing to the terms of his plea agreement, not agreeing that anyone influenced his statement. (*Id.* at 31-32.) Then, Price cannot recall what he was talking about altogether, and states that he was on drugs at the time. (*Id.* at 33.) Price's confusion throughout this interview is apparent.

Price's testimony does not lead the Court to conclude he was coerced into giving false testimony, but it further reinforces that any attempt to raise the issue of police misconduct through such an unreliable witness would have been futile and possibly detrimental to Petitioner. Using Price's transcripts—an inconsistent witness who had substance and psychological issues and difficulty remembering events—as evidence of a nefarious police plot to frame Petitioner could have easily backfired. In addition, putting Price on the stand could have opened the door to his testimony that he (1) distributed

drugs for the Petitioner, (2) was a witness to Petitioner's assault on the victim, and (3) had been personally assaulted by Petitioner. Given the option between excluding Price's testimony entirely or having Price testify as an eyewitness and allege police misconduct, this Court does not find that counsel's choice to not call Price as a witness to show police misconduct was below an objective standard of representation.

In sum, the Court finds that the exhibits which were never submitted to the state court are not reviewable by this Court. Even if, *arguendo*, the Court did consider them in making its determination, the interviews, hearings, newspaper articles, and police reports support both the state court and the Magistrate Judge's conclusion that not raising the issue of police misconduct was a reasonable strategic move.

Furthermore, Petitioner cannot demonstrate prejudice resulted from counsel's inaction. There was adequate evidence of Petitioner's assault and sufficiently correlating testimony at trial. Even if there was an allegation of police misconduct, it is unlikely that it would have resulted in an acquittal. There were other witnesses who corroborated the victim and Price's story that Petitioner escorted the victim out of a residence and beat him, fracturing his hand. Petitioner was not convicted of a crime for which he was actually innocent. Nor has he shown that he has been denied a fundamentally fair trial.

The trial court and appellate court correctly determined that failing to raise the issue of police misconduct was not ineffective assistance of counsel and the dismissal of Petitioner's claim was not "contrary to" or "an unreasonable application of" federal law. *See* 28 U.S.C. § 2254(d).

- ***Grounds Two and Three: Governmental and Prosecutorial Misconduct***

In Grounds Two and Three, Petitioner claims the SVPD's bribe for testimony constituted governmental misconduct, and the choice to prosecute the case when the state knew of the bribe amounted to prosecutorial misconduct. (Doc. 1 at 9-12.) Petitioner raised these issues in his *pro se* state PCR Petition. (Doc. 21-11 at 3-4.) Both the trial court and appellate court found that Petitioner's claims of governmental and police misconduct were procedurally defaulted because the issues were not raised on direct appeal or by post-trial motion. (Doc. 22-1 at 2.) The Court finds that this procedural bar

rested on adequate and independent state grounds, precluding review by this Court. *See Cook v Schriro,* 538 F.3d 100, 1026 (9th Cir. 2008) ("Preclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) are independent of federal law because they do not depend on a federal constitutional ruling on the merits." (internal citations and quotations omitted)).

> ○ ***Procedural Default Due to Ineffective Assistance of Appellate and PCR Counsel***

Petitioner raises the failure to present the claims of prosecutorial and governmental misconduct due to ineffective assistance of appellate and PCR counsel. (Doc. 35 at 17-18, 20.) This claim fails.

The Magistrate Judge concluded that Petitioner's claim of ineffectiveness of appellate counsel cannot provide cause to excuse his failure to raise this issue in the state court, because appellate counsel's ineffectiveness was never raised as an independent claim before the state court. (Doc. 30 at 9.) It is therefore technically exhausted and procedurally barred. (*Id.*)

Petitioner objected, attempting to circumvent the procedural default by claiming that the ineffectiveness of appellate counsel was not raised at the state level because his PCR counsel was ineffective. (Doc. 35 at 17-18, 20.) He asserts he had a constitutional right to an effective PCR attorney to file his ineffective assistance of counsel claim because the State of Arizona only allows ineffective assistance of counsel claims in a collateral attack. (*Id.* at 20-21.) Petitioner conversely claims he *did* raise the ineffectiveness of PCR counsel in his Petition for Review before the Arizona Court of Appeals. (*Id.* at 17-18.)

"[T]he exhaustion doctrine generally requires that an ineffective assistance claim be presented to the State courts as an independent claim before it may be used to establish cause for a procedural default in federal habeas proceedings." *Murray* , 477 U.S. at 479 (1986). This Court may only hear Petitioner's defaulted claim of ineffective assistance of counsel if he can establish cause for the default and prejudice. *Franklin*, 290 F.3d at 1231; *see also Martinez v. Ryan*, 566 U.S. 1, 10 (2012).

"[T]here is no right to counsel in State collateral proceedings." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). Because there is no right to PCR counsel, "any attorney error that led to the default of [petitioner's] claims in State court cannot constitute cause to excuse the default in federal habeas." *Id.* at 757. There is one limited exception to this rule: where (1) PCR counsel rendered ineffective assistance by failing to raise an ineffective assistance of *trial* counsel claim, (2) petitioner is now procedurally defaulted from raising this claim, and (3) the State court prohibits raising the claim of ineffective assistance of *trial* counsel claim until collateral attack in a Rule 32 petition. *Martinez v. Ryan*, 566 U.S. 1, 10 (2012). However, this exception *is not* extended to claims of ineffective assistance of *appellate* counsel. *Davila v. Davis,* 137 S.Ct. 2058, 2066 (2017).

Petitioner's argument that the case of *Martinez v. Ryan,* 566 U.S. 1 (2012), allows him to raise his claim of ineffective assistance of appellate counsel is inapposite. (Doc. 35 at 18.) *Martinez* held that a petitioner may raise ineffective assistance of PCR counsel as cause for a procedurally defaulted claim of ineffective assistance of trial counsel in his state habeas petition. 566 U.S. at 9. However, a more recent case, *Davila v. Davis*, limits the *Martinez* decision to only claims against trial counsel. 137 S.Ct. at 2066. A claim that PCR counsel was ineffective by not raising the ineffectiveness of appellate counsel may not be used as cause to excuse the procedurally defaulted claim of ineffective assistance of *appellate* counsel. *Id.* The Supreme Court explained that the strong constitutional interests present at trial: in preventing trial error; in the constitutional protections of a fair trial; and in the presumption of innocence; are not present at the appellate level. *Id.* at 2066-2067. It also noted that permitting an exception for appellate claims, "could flood the federal courts with defaulted claims of appellate ineffectiveness. For one thing, every prisoner in the country could bring these claims." *Id.* at 2069. It is not cost-efficient to the courts to extend the *Martinez* exception to these types of claims. *Id.* As such, the court refused to extend federal review of procedurally barred claims to cases of ineffective appellate assistance due to ineffective PCR counsel.

Therefore, Petitioner cannot establish cause for his failure to raise ineffectiveness of appellate counsel by claiming ineffectiveness of PCR counsel.

> ○ ***Ineffectiveness of Appellate Counsel First Raised in PCR Petition for Review***

Petitioner concurrently asserts that he *did* raise the ineffective assistance of appellate counsel claim before the state court. (Doc. 35 at 18.) This occurred in his P*ro Se* PCR Petition for Review to the Arizona Court of Appeals. (Doc. 22-2 at 8.) He claims this permits the Court to rule on his claim.

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction *in a petition for post-conviction relief pursuant to Rule 32*." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (emphasis added). "A defendant is precluded from relief under Rule 32 based on any ground . . . waived in any previous collateral proceeding." A.R.S. Rule 32.2(a).

Petitioner only raised the claim of ineffective appellate counsel in his appeal from his Rule 32 PCR petition; the issue was never before the trial court. (Doc. 22-2 at 8.) Therefore, the claim was never properly presented to the state court. *See Murray,* 477 U.S. at 488-89 (1986). Petitioner is now unable to return to state court to present this argument, and the claim is procedurally barred from federal review.

In addition, the state appellate court did not directly address the appellate counsel assertion, likely because Petitioner's Argument Number Five appears to make an ineffective assistance of trial counsel claim, not appellate counsel. Petitioner's argument begins by asking, "Was trial court [sic] abuse of discretion because of ineffective assistance of counsel?" (Doc. 22-2 at 10.) Then it discusses the trial judge's abuse of discretion. Finally, it states, "Nor counsel on direct appeal for being incompetent and ineffective assistance by not raising these claims for the defendant whom they were appointed to represent. (*see Martinez v. Ryan*, 132 S. Ct. 130.2011, *Strickland v. Washington*[,] 466 U.S. 668 (1984)" (*Id.*)

The argument could be easily misconstrued as raising an ineffective assistance of counsel claim, while citing general case law on ineffective assistance claims. The claim

of ineffective assistance of appellate counsel is convoluted, and is difficult to discern in the page-long paragraph that at first appears to raise a trial counsel ineffectiveness claim, morphs into a trial judge's abuse of discretion, and finally cites case law on appellate counsel's ineffectiveness claims. The fact that Petitioner was raising an ineffective assistance of appellate counsel claim is far from clear.

The Arizona Court of Appeals dismissed Petitioner's petition for review, finding that the trial court had properly denied petitioner's claims of ineffective assistance of trial counsel because the choice to not use the audio and video was trial strategy and not ineffective. (Doc. 22-3 at 4.) Furthermore, the trial court properly determined that the prosecutorial and governmental misconduct claims were precluded. (*Id.*)

Nonetheless, even if the Arizona Court of Appeals had directly addressed the issue, it would have found the claim of ineffective assistance of appellate counsel precluded because Petitioner failed to raise it in the earlier PCR petition. Petitioner had ample opportunity to raise the issue, first through PCR counsel, then through his *pro se* PCR petition, and failed to do so. The issue was therefore waived. See A.R.S. Rule 32.2(a).

Furthermore, Petitioner is unable to demonstrate he was prejudiced by appellate counsel's failure to raise the issues related to the bribe for victim's testimony. For the reasons stated in the section addressing the ineffectiveness of trial counsel, the evidence presented to the state court did not support a claim of either governmental or prosecutorial misconduct. So, even if Petitioner had raised ineffectiveness of appellate and Rule 32 counsel for failing to address the alleged bribe, for the same reasons as Petitioner's trial counsel ineffectiveness claim, it is unlikely to have changed the outcome.

- ***Ground Five: Trial Judge Abuse of Discretion: Enhanced Sentencing Range***

Petitioner's Ground Five and his motion for writ of *habeas corpus ad prosequendum* claim that his sentence was enhanced illegally because of the use of a deadly weapon. (Doc. 1 at 14; Doc. 18 at 2.) He objects to the Magistrate Judge's

determination that his claim was not exhausted in the state court and is procedurally defaulted, as well as the conclusion that the claim is not cognizable. (Doc. 35 at 22.) Petitioner argues

"Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) (*citing Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993). The Court does not find Petitioner's sentence fundamentally unfair and denies relief.

Petitioner was sentenced under the dangerous offender statute, A.R.S. §13-704, to a presumptive term for a Class 3 felony under A.R.S. §13-704(A). (Doc. 20-4.) Petitioner argues A.R.S. §13-702 was the appropriate sentencing statute. (Doc. 35 at 23.) This statute is for first time felony offenders. Petitioner claims his sentence was illegal because the sentence was improperly aggravated based on the dangerous nature of the crime. (Doc. 35 at 23-24.) Petitioner further argues he should not have been sentenced under the dangerous offender statute because the jury did not determine his offense was either a dangerous offense or intentional. (Doc. 38 at 6, 8.)

○ ***Aggravated Sentence***

Petitioner's evidence that his sentence was aggravated is based first on the County Attorney's Allegation of Aggravating Factors in the charging document. (Doc. 35 at 24; Doc. 36-18 at 5.) However, the judge's sentence was not an aggravated sentence, but a presumptive one under the dangerous offender statute. The Sentence of Imprisonment judgment confirms this. (Doc. 20-3 at 2-3.)

○ ***Dangerous Offense***

Petitioner claims that there was no finding that his conviction was for a dangerous offense, therefore he should not have been sentenced under the dangerous offender statute. (Doc. 38 at 7.) However, the verdict form indicates that the jury unanimously concluded both that the aggravated assault by means of force and the aggravated assault by using a deadly weapon or dangerous instrument convictions were dangerous offenses. (Doc. 39-1 at 13-4.) This is confirmed by the trial court's minute entry. (Doc. 20-2 at 7.)

Again, sentencing Petitioner under the dangerous nature statute did not aggravate his sentence. Rather, the trial court sentenced him to the presumptive sentence under §13-704 because he stood "convicted of a felony that is a dangerous offense." A.R.S. §13-704(A). A dangerous offense is defined as, "an offense involving the . . . intentional or knowing infliction of serious physical injury on another person." A.R.S. §13-105(13). "'Serious physical injury' includes physical injury that . . . causes . . . serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. §13-105 (39). The trial court appropriately determined that both convictions were dangerous offenses and sentenced Petitioner accordingly. (*See* Doc. 20-2.) This determination was not fundamentally unfair.

### o *Knowing Infliction of Serious Injury*

Petitioner further attests that since the elements of aggravated assault with a deadly weapon on the jury verdict form made no findings of the *intentional* or *knowing* infliction of bodily injury, his sentence could not be aggravated for "dangerous offense." (Doc. 38 at 6.) Essentially, Petitioner is contending that although the jury instruction was proper, since the element of knowingly/intentionally was not on the jury verdict, he was not determined guilty of the intent which is necessary to the definition of a dangerous offense. Therefore he cannot be sentenced under A.R.S. 13-704(A).

Petitioner's purported copy of the jury instructions is woefully incomplete, and fails to indicate the case number. (Doc. 39-1.) Assuming that the instructions are actually from the instant state court case, the jury instruction indicated:

> The crime of aggravated assault with a deadly weapon or dangerous instrument requires proof of the following:
> 1. The defendant committed an assault by intentionally, knowingly, or recklessly causing any physical injury to another person;
> 2. The assault was aggravated by the defendant's use of a deadly weapon or dangerous instrument.

(*Id.* at 9.) This instruction includes the mental state of recklessly, and therefore it could be construed that if found guilty, Petitioner may not have had the necessary intent to fall under the dangerous nature statute.

But, the trial judge separately instructed the jurors that if they found Petitioner guilty of any charge, they must then make a separate assessment of the dangerous nature of the offense. (Doc. 28-1 at 44-45.) The judge indicated there was a separate instruction on dangerous offense included in the jury instructions. (*Id.* at 44-45.) The jury instructions state:

> If you find the defendant guilty of kidnapping, aggravated robbery, armed robbery or aggravated assault, you must determine whether or not the offense was a dangerous one. An offense is a dangerous offense if it involved the *intentional or knowing* infliction of serous physical injury or the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument. The State has the burden of proving beyond a reasonable doubt that the offense was a dangerous offense. Your finding on this issue must be unanimous.

(Doc. 39-1 at 10 (emphasis added).)

The jury considered the full instructions, found the Petitioner guilty on both counts, and independently determined these convictions were dangerous offenses. (Doc. 39-1 at 13-4; Doc. 20-2 at 7.) The jury determined Petitioner's offenses were dangerous, therefore the jury unanimously determined the offenses were intentional or knowing. The Petitioner has therefore failed to meet his burden of demonstrating that the trial court's sentence was fundamentally unfair.

Finally, Petitioner again claims that the procedurally defaulted claim was due to ineffective trial, appellate, and PCR counsel. (Doc. 38 at 4.) Petitioner's arguments are unconvincing, because Petitioner cannot show prejudice. Based on the record before this Court, there is no indication that the claim could have been raised in the state court successfully, or that had it been raised the outcome would have been different.

After a *de novo* review, the Court agrees with the Magistrate Judge's evaluation. At no point in his state court proceedings were these issues raised; they are therefore unexhausted. They cannot be raised now in the state court and are procedurally barred. Furthermore, there is no showing that the sentencing was fundamentally unfair. Therefore, Petitioner's claim is not cognizable.

- **Grounds Four and Six, Trial Judge Abuse of Discretion: Invocation of Local Rule to Suppress Evidence**

Petitioner's Ground Four and Six allege that the trial judge's decision to prohibit Petitioner from presenting the victim's testimony pursuant to a local rule was a violation of Petitioner's due process rights. (Doc. 1 at 13, 16.) The Magistrate Judge determined that Petitioner had not alleged at the state level that the judge's determinations were constitutional violations. Therefore, the district court could not consider the claims under 28 U.S.C. § 2254(a).

Petitioner filed both an objection and supplemental objection to the Magistrate Judge's determination. In the objections, Petitioner admits he did not raise the constitutional violations, but argues that was due to the ineffective assistance of appellate and PCR counsel. (Doc. 35 at 27.) Petitioner again believes *Martinez v. Ryan* affords him relief in this instance. But again, Petitioner may not blame appellate and PCR counsel's ineffectiveness on his failure to claim a constitutional violation on appeal.

Furthermore, review of state evidentiary procedures plays "no part of a federal court's habeas review of a state conviction. [The U.S. Supreme Court has] stated many times that 'federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); see also *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). In addition, "[a] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. The Ninth Circuit has stated:

> It is not sufficient to raise only the facts supporting the claim; rather, the constitutional claim ... inherent in those facts must be brought to the attention of the state court. Neither is the exhaustion requirement satisfied by the mere circumstance that the due process ramifications of an argument might be self-evident. Instead, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Gatlin*, 189 F.3d at 887–88 (internal citations and quotation marks omitted).

Petitioner failed to raise his constitutional claim to the state court. This failure cannot be attributed to ineffective assistance, for he had ample opportunity to raise the constitutional claim at the trial court level in his *pro se* PCR filing, but did not. (Doc. 21-11.) The basis for his claim was known at the time he filed his collateral petition, and any failure lies directly on the shoulders of Petitioner. And, even if Petitioner had raised the issue previously, the Court cannot review the evidentiary decisions of a state court proceeding in a §2254 habeas petition. *See Estelle,* 112 S.Ct. at 479-80.

The Court finds that Petitioner's constitutional claim is now technically exhausted and procedurally defaulted. The Court is procedurally barred from reviewing this matter.

- ***Certificate of Appealability***

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

The Court finds that jurists of reason would not find it debatable whether the Petition stated a valid claim of the denial of a constitutional right and the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural rulings. A COA shall not issue.

///

///

- 20 -

Accordingly, IT IS ORDERED the Report and Recommendation (Doc. 30) is ADOPTED. Petitioner's Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1) and motion for a writ of habeas corpus *ad prosequendum* (Doc. 18) are DENIED. The Clerk of Court shall issue judgment accordingly and close the case file in this matter.

Dated this 14th day of February, 2018.


Honorable Cindy K. Jorgenson
United States District Judge